STATE OF CONNECTICUT *v.* BRIAN R. GRECO
(13864)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

---

Argued May 30—decision released August 14, 1990

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Brian R. Greco, was charged in a substitute information with the crimes of felony murder in violation of General Statutes § 53a-54c,[1] robbery in the first degree in violation of

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assaul in the first degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon,

General Statutes § 53a-134 (a) (2),[2] and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1).[3] In setting forth the predicate offenses, the felony murder count alleged that the defendant "did commit or attempt to commit a robbery of [the victim] and burglary of [the victim's] residence."[4]

The defendant pleaded not guilty to all three counts of the substitute information and elected to be tried by a jury. He thereafter filed a motion to dismiss the first degree robbery count and the first degree burglary count pursuant to Practice Book § 815 (4).[5] The basis

or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE; CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[4] The felony murder count stated: "ROLAND D. FASANO, Assistant State's Attorney for the Judicial District of NEW HAVEN accuses BRIAN GRECO of FELONY MURDER and charges that at the Town or City of HAMDEN on or about the 6th day of SEPTEMBER 1988 at approximately midnight, in the area of 388 Howard Drive the said BRIAN GRECO did commit or attempt to commit a robbery of ROBERT BESSINGER and burglary of his residence, and, in the course of and in furtherance of said crimes he, or another participant in the crimes, caused the death of a person other than one of the participants; to wit, ROBERT BESSINGER, all in violation of Section 53a-54c of the General Statutes."

[5] Practice Book § 815 (4) provides: "[MOTION TO DISMISS]—MATTERS TO BE RAISED

"The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information . . . .

"(4) Absence of jurisdiction of the court over the defendant or the subject matter."

for the defendant's motion was his claim that the state, by charging first degree robbery and first degree burglary as separate offenses, violated his constitutional right against double jeopardy because robbery and burglary were also the predicate offenses of the felony murder count. The trial court, *Ronan, J.*, denied the defendant's motion. The Appellate Court dismissed, sua sponte, the defendant's appeal of the denial of that motion.

Subsequently, the defendant changed his plea on all three counts to guilty pursuant to the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Prior to accepting the defendant's plea, the trial court, *Damiani, J.,* provided the following information to the defendant pursuant to Practice Book § 711:[6] (1) for the crime of felony murder, the minimum mandatory prison sentence was twenty-five years, while the maximum possible sentence was life imprisonment;[7] (2) for the crime of robbery in the first degree, the minimum mandatory prison sentence was

---

[6] "[Practice Book] Sec. 711. [PLEA OF GUILTY OR NOLO CONTENDERE]——ADVICE TO DEFENDANT

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not be compelled to incriminate himself."

[7] See General Statutes §§ 53a-54c, 53a-54a (c), 53a-35a (2). The trial court told the defendant that under Connecticut law a life sentence is sixty years. See General Statutes § 53a-35b.

five years, while the maximum possible sentence was twenty years imprisonment; (3) for the crime of burglary in the first degree, the minimum mandatory prison sentence was five years while the maximum possible sentence was twenty years imprisonment; (4) the maximum prison sentence possible from consecutive sentences on all three counts was eighty years notwithstanding the opinion of the prosecutor that it was one hundred years.[8] The trial court also informed the defendant that it would impose a total effective sentence of fifty years imprisonment if the defendant pleaded guilty to all three counts.

Before the court accepted his guilty plea the defendant argued that, assuming the validity of his claim that the double jeopardy clause barred punishing him for both felony murder and the predicate offenses, the maximum possible prison term from consecutive sentences was sixty years. The defendant claimed that the uncertain status of his double jeopardy claim and its impact on his possible maximum sentence raised a question as to whether his guilty plea could knowingly be made under such circumstances. The trial court told the defendant that the double jeopardy issue would not be preserved if the defendant were to plead guilty and that he would have to go to trial if he wished to litigate that issue. The defendant rejected this offer and the trial court accepted his guilty plea after finding that it was made voluntarily and with the assistance of counsel.

The defendant subsequently filed a motion to withdraw his guilty plea, claiming that his plea was taken

---

[8] The state asserts that imposing consecutive sentences for felony murder and for both of the predicate felonies is not barred by the double jeopardy clause and thus the defendant could have received a sixty year sentence on the felony murder count, twenty years for the first degree robbery count, and twenty years for the first degree burglary count, for a total sentence of one hundred years. The trial court did not explain how it arrived at the eighty year figure for the maximum possible sentence from consecutive terms.

in violation of Practice Book § 711 (4) because he had not been properly informed of the maximum possible sentence he faced from consecutive sentences. In his motion, the defendant noted that, at the time he changed his plea to guilty, his attorney had informed him that the maximum possible sentence was either sixty or one hundred years, while the court had informed him that the maximum possible sentence was eighty years. The trial court denied the defendant's motion to withdraw his guilty plea.

The court, as it had previously indicated, then sentenced the defendant to fifty years imprisonment on the felony murder count, and concurrent ten year sentences on both the first degree robbery count and the first degree burglary count. The defendant appealed the trial court's denial of his motion to withdraw his guilty plea to this court pursuant to General Statutes § 51-199 (b) (3).[9]

The defendant claims that he should have been allowed to withdraw his guilty plea under Practice Book §§ 720 and 721.[10] He maintains that because the dou-

---

[9] "[General Statutes] Sec. 51-199. JURISDICTION. . . .

"(b) The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[10] "[Practice Book] Sec. 720. [WITHDRAWAL OF PLEA]——WHEN ALLOWED

"A defendant may withdraw his plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed.

"Sec. 721.——GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

ble jeopardy clause prevents the state from punishing him for felony murder, first degree robbery and first degree burglary, the maximum sentence possible was sixty years. The defendant argues that, since the trial court informed him that the maximum sentence possible from the imposition of consecutive sentences was eighty years, the plea was accepted without substantial compliance with Practice Book § 711,[11] and consequently the court should have allowed his plea to be withdrawn pursuant to § 721 (1). In addition, the defendant claims that he should have been allowed to withdraw his guilty plea under § 721 (2) because the court's allegedly erroneous advice as to the maximum sentence made it impossible for him voluntarily to waive his constitutional rights by pleading guilty.

The defendant conceded at oral argument that the success of his claim that his guilty plea was involuntary and was accepted without substantial compliance with § 711 (2) and (4) is dependent upon our agreement with his double jeopardy argument. Because we find that the double jeopardy clause would not bar the court from imposing consecutive sentences upon the defendant for the felony murder conviction and for the first

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[11] The defendant also asserts that the trial court incorrectly informed him of the mandatory minimum sentence as a basis for his claim that there was not substantial compliance with Practice Book § 711. Since this claim, like the argument concerning the maximum possible sentence, is based on the defendant's interpretation of the double jeopardy clause, our analysis of the double jeopardy issue will dispose of this claim as well.

degree robbery and first degree burglary convictions,[12] we conclude that the trial court properly denied the defendant's motion to withdraw his guilty plea. Although the trial court incorrectly told the defendant that the maximum possible prison sentence he faced from consecutive sentences was eighty years, the defendant conceded at oral argument that this error does not support the claim that his plea was involuntary and was accepted without substantial compliance with § 711. Since the defendant pleaded guilty and accepted a fifty year sentence when informed that he faced a maximum possible prison sentence of eighty years, his plea certainly would have been the same if the trial court had properly informed him that the maximum possible sentence for the crimes charged was one hundred years.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Lonergan,* 213 Conn. 74, 78, 566 A.2d 677 (1989), cert. denied,      U.S.    , 110

---

[12] On the basis of our rejection of the defendant's double jeopardy argument, we need not rule on whether the failure of a trial court correctly to inform a defendant of the maximum possible sentence constitutes grounds for withdrawal of a guilty plea under Practice Book § 721 (1) and (2). See *State* v. *Collins,* 207 Conn. 590, 595–96, 542 A.2d 1131 (1988) (concluding that the defendant's unpreserved claim that the trial court improperly accepted his guilty pleas despite the court's failure to inform him of the mandatory minimum sentence was not reviewable because the defendant could not claim that the total effective sentence he received was any different from the sentence promised in the plea agreement); *State* v. *Wright,* 207 Conn. 276, 289, 542 A.2d 299 (1988) ("the trial court's omission in failing to advise the defendant of the mandatory minimum sentences did not implicate constitutional rights").

S. Ct. 2586, 110 L. Ed. 2d 267 (1990). This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Anderson,* 212 Conn. 31, 35, 561 A.2d 897 (1989); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

The defendant's claim that the maximum possible prison sentence was sixty years involves that aspect of double jeopardy analysis that protects against multiple punishments for the same offense in a single trial. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); *Garrett* v. *United States,* 471 U.S. 773, 793, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); *Albernaz* v. *United States,* 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *State* v. *Couture,* 194 Conn. 530, 566, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). "[T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown* v. *Ohio,* supra, 165. "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Rawls,* 198 Conn. 111, 120, 502 A.2d 374 (1985); *State* v. *Madera,* 198 Conn. 92, 109, 503 A.2d 136 (1985).

" ' "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the

same offense. Multiple punishments are forbidden only if both conditions are met." ' *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986)." *State* v. *John,* supra, 693. There is no dispute in this case that each of the three crimes with which the defendant was charged arose out of the same transaction. Thus, the question is whether robbery in the first degree, burglary in the first degree, and felony murder based on the predicate offenses of "robbery and burglary" are the same offense for the purposes of double jeopardy analysis.

The traditional approach to analyzing whether two offenses constitute the same offense was set forth in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304; *State* v. *John,* supra, 695. " 'In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial.' *State* v. *Wright,* 197 Conn. 588, 593, 500 A.2d 547 (1985)." *State* v. *John,* supra, 695.

Applying the *Blockburger* test to this case, we conclude that first degree robbery and first degree burglary constitute the same offense as felony murder under that test, where the felony murder count alleges "robbery and burglary" as the predicate offenses. This conclusion is dictated by our decision in *State* v. *Morin,* 180 Conn. 599, 601–605, 430 A.2d 1297 (1980), where we concluded that first degree robbery and first degree burglary are lesser included offenses of felony murder.

The felony murder indictment in *State* v. *Morin,* supra, 602, alleged that the defendant "did commit a

*burglary* and *robbery.*" (Emphasis added.) The defendant appealed the trial court's refusal to instruct the jury on first degree robbery and first degree burglary as lesser included offenses of the felony murder indictment. Although *State* v. *Morin* involved the application of the test used to determine when a defendant is entitled to an instruction on a lesser included offense, as opposed to the *Blockburger* test, the former test includes an inquiry into whether "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." Id., 601. This prong of the test is satisfied if the lesser offense does not " 'require any element which is not needed to commit the greater offense.' " *State* v. *Castro,* 196 Conn. 421, 428, 493 A.2d 223 (1985); *State* v. *Troynack,* 174 Conn. 89, 97, 384 A.2d 326 (1977). We concluded that it was not possible to commit felony murder in the manner indicated in the indictment without having also committed first degree robbery and first degree burglary. *State* v. *Morin,* supra, 602. Since, under *State* v. *Morin,* there are no elements of first degree robbery and first degree burglary which are not also elements of felony murder when the felony murder count alleges "robbery and burglary" as the predicate offenses, these offenses constitute the "same offense" as the felony murder charge under the *Blockburger* test.

The application of the *Blockburger* test, however, does not end our analysis of the double jeopardy issue. "[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett* v. *United States,* supra, 779; *Missouri* v. *Hunter,* supra, 368; *Albernaz* v. *United States,* supra, 340; *Whalen* v. *United States,* 445 U.S. 684, 691–92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); *State* v. *John,* supra, 695–97; *State* v. *Delgado,* 19 Conn. App. 245, 251–52, 562 A.2d 539 (1989).

Double jeopardy protection against cumulative punishments is only "designed to ensure that the sentencing discretion of the courts is confined to the limits established by the legislature." *Ohio* v. *Johnson,* 467 U.S. 493, 499, 104 S. Ct. 2536, 81 L. Ed. 2d 425, reh. denied, 468 U.S. 1224, 105 S. Ct. 20, 82 L. Ed. 2d 915 (1984). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri* v. *Hunter,* supra, 368–69. "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz* v. *United States,* supra, 340; *Beam* v. *Foltz,* 832 F.2d 1401, 1411, cert. denied, 485 U.S. 980, 108 S. Ct. 1278, 99 L. Ed. 2d 489 (1988). The language, structure and legislative history of a statute can provide evidence of this intent. *Garrett* v. *United States,* supra, 779. Because we conclude that the legislature clearly intended multiple punishments for felony murder and the predicate offenses of robbery and burglary, the maximum possible prison sentence faced by the defendant was one hundred years and thus the defendant has no grounds for his claim that the trial court should have allowed the withdrawal of his guilty plea. *Brimmage* v. *Sumner,* 793 F.2d 1014, 1015–16 (9th Cir. 1986) (although robbery lesser included offense of felony murder, cumulative punishments do not violate double jeopardy because legislature intended to impose multiple punishments).

The language of General Statutes § 53a-54c, the felony murder statute, and the related penalty provi-

sions in General Statutes §§ 53a-54a (c) and 53a-35a (2)[13] provide the first source of evidence that the legislature clearly intended multiple punishments. In *Garrett* v. *United States,* supra, 779, the United States Supreme Court found evidence of congressional intent to provide multiple punishments for the violation of a continuing criminal enterprise statute and for the predicate offenses where the language of the statute "affirmatively state[d] an offense for which punishment will be imposed." The court found additional evidence in the fact that the statute in question contained no reference to other statutory offenses and set forth a separate penalty rather than using a multiplier of the penalty for another offense. Id., 781; see *Birr* v. *State,* 744 P.2d 1117, 1121–22 (Wyo. 1987). Section 53a-54c clearly states a separate offense for which pun-

---

[13] General Statutes § 53a-54a (c) provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. . . .

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

"[General Statutes]  Sec. 53a-35a. IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for a class B felony, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-55a, 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (5) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (6) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b, the term shall be not less than two years nor more than five years, and for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years; (7) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

ishment will be imposed. Although its penalty provisions are set forth in §§ 53a-54a (c) and 53a-35a (2), the penalty established for felony murder, a prison term of at least twenty-five years and not more than life, stands alone and is not based on a multiplier of the penalty for the predictate offense.

Further evidence of the legislature's intent to provide for cumulative punishment is found in the absence of the type of language used in General Statutes § 53a-55a (a): "No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information." The legislature has employed similar language in at least twelve other criminal statutes.[14] Since the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment, the absence of similar language in § 53a-54c provides evidence that the legislature intended cumulative punishment. See *In re Ralph M.*, 211 Conn. 289, 306, 559 A.2d 179 (1989); *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988).

Our conclusion as to the legislature's intent is also based upon the distinct nature of the interests protected by the felony murder, robbery and burglary statutes. The United States Supreme Court found support for its conclusion that Congress intended multiple punishment for violations of two conspiracy statutes in the fact that the statutes were "directed to separate evils presented by drug trafficking," namely importation and distribution. *Albernaz* v. *United States,* supra, 343. In *State* v. *Couture,* supra, 565–66, we employed similar

---

[14] See General Statutes §§ 53a-56a (a), 53a-59a (b), 53a-60a (a), 53a-60b (b), 53a-60c (b), 53a-61a (b), 53a-70a (a), 53a-72b (a), 53a-92a (a), 53a-94a (a), 53a-102a (a), and 53a-103a (a).

reasoning in concluding that the legislature authorized multiple punishments under the felony murder statute where the defendant was convicted of three felony murders arising from the same incident. "Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore when two or more persons are the victims of a single episode there are as many offenses as there are victims." Id., 566.

An obvious purpose of the felony murder statute, or any murder statute, is to protect human life. See id. In contrast, "[t]he basic rationale [of the robbery statutes] is protection against the terror of the forcible taking"; Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1971) p.41; while the primary rationale of the crime of burglary is "protection against invasion of premises likely to terrorize occupants." Commission to Revise the Criminal Statutes, supra, p. 32. Each of these three statutes penalizes a different type of evil. Since the felony murder statute and the underlying felony statutes are designed to address separate evils, they provide clear evidence that the legislature intended multiple punishments. *Talancon* v. *State,* 102 Nev. 294, 300, 721 P.2d 764 (1986) (felony murder and robbery with use of a deadly weapon); *State* v. *Blackburn,* 694 S.W.2d 934, 937 (Tenn. 1985) (felony murder and assault with intent to commit rape); *Birr* v. *State,* supra, 1121 (felony murder and aggravated robbery).

"The legislative history of the felony murder statute, § 53a-54c, indicates that its purpose was to fill an omission in the statutory definition of murder in § 53a-54a. In restoring the concept of felony murder, which had been omitted from the original enactment of the penal code, the legislature intended to specify another manner in which the crime of murder could

be committed, rather than create a new crime. Such a purpose would have been in keeping with this state's murder statute prior to the enactment of the penal code, when the felony murder principle was simply included in the statutory definition of first degree murder." *State* v. *John,* supra, 696. The legislative history of § 53a-54c indicates that the felony murder statute was enacted to provide prosecutors with a means of proving murder in cases where a homicide occurs during the commission of certain felonies but specific intent to kill cannot be proven. 17 H.R. Proc., Pt. 6, 1974 Sess., pp. 3218–19, 3221–22; Conn. Joint Standing Committee Hearings, Judiciary, 1974 Sess., pp. 236–37. It would be unreasonable to conclude that in correcting this omission from the penal code the legislature, without saying so, also intended that the underlying felony could not be punished. See *Commonwealth* v. *Sparrow,* 471 Pa. 490, 504–506, 370 A.2d 712 (1977); *Birr* v. *State,* supra, 1121.

On the basis of our examination of the language, structure and legislative history of § 53a-54c, we conclude that the legislature clearly intended multiple punishments for felony murder and the underlying predicate offenses of robbery and burglary.[15] Our double jeopardy analysis leads to the conclusion that the

---

[15] Other courts have concluded that the double jeopardy clause does not prohibit punishment for both felony murder and the underlying offense because the legislature intended multiple punishments. See *Gillespie* v. *Ryan,* 837 F.2d 628, 630–32 (3d Cir.), cert. denied, 488 U.S. 833, 109 S. Ct. 90, 102 L. Ed. 2d 66 (1988) (consecutive sentences for felony murder and for underlying felony of robbery do not violate double jeopardy clause because state legislature defines each as a separate crime, applying Pennsylvania law in a case involving felony murder and robbery); *Deloach* v. *Wainwright,* 777 F.2d 1524, 1525–26 (11th Cir. 1985) (per curiam) (sentences for both felony murder and underlying felony do not violate double jeopardy clause because Florida legislature intended multiple punishments for offenses); *State* v. *Enmund,* 476 So. 2d 165, 167 (Fla. 1985) (felony murder and robbery); *Talancon* v. *State,* 102 Nev. 294, 297–302, 721 P.2d 764 (1986) (felony murder and robbery with use of a deadly weapon); *State* v.

defendant faced a maximum possible term of imprisonment from consecutive sentences of one hundred years, and thus the defendant has no basis for his argument that the trial court should have allowed him to withdraw his guilty plea pursuant to Practice Book §§ 720 and 721.

The trial court's denial of the defendant's motion to withdraw his guilty plea is affirmed.

In this opinion PETERS, C. J., GLASS and HULL, Js., concurred.

SHEA, J., concurring. Although I agree with the result reached by the majority, I disagree with its declaration that "there are no elements of first degree robbery and first degree burglary which are not also elements of felony murder when the felony murder count alleges 'robbery and burglary' as the predicate offenses" and its conclusion that "these offenses constitute the 'same offense' as the felony murder charge under the *Blockburger* test."[1] See *Blockburger* v. *United*

_____

*Blackburn,* 694 S.W.2d 934, 935–37 (Tenn. 1985) (felony murder and assault with intent to commit rape); *Spain* v. *Commissioner,* 7 Va. App. 385, 373 S.E.2d 728 (1988) (felony murder and robbery); *Birr* v. *State,* 744 P.2d 1117 (Wyo. 1987) (felony murder and aggravated robbery).

[1] The majority declares that its "conclusion is dictated by our decision in *State* v. *Morin,* 180 Conn. 599, 601–605, 430 A.2d 1297 (1980), where we concluded that first degree robbery and first degree burglary are lesser included offenses of felony murder." In *Morin,* both the state and the defendant filed requests to charge on first degree robbery and first degree burglary that this court "characterized as a mutual acknowledgment that the allegations of the indictment supported a charge on those crimes as lesser included offenses under *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547 (1972)." Id., 602 n.4. The court relied upon that mutual understanding and made no independent *Blockburger* analysis. See *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Furthermore, in *Morin* there were no separate counts alleging use of a deadly weapon in the commission of first degree robbery and first degree burglary, as in the present case, but only a single count indictment for felony murder alleging a robbery and burglary without specifying the manner in which

States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). As charged in this information, both first degree robbery and first degree burglary contain an element, being "armed with a deadly weapon," not included in the felony murder count and, therefore, are separate offenses. Accordingly, I agree with the majority that the maximum possible sentence for the three crimes was one hundred years and that the trial court's erroneous reference to a maximum of eighty years could not have been a material inducement in the defendant's decision to plead guilty.

The second count of the information charges the defendant with robbery in the first degree by virtue of having robbed the victim while "he or another participant in the crime was armed with a deadly weapon; to wit, a handgun" in violation of General Statutes § 53a-134 (a) (2). Similarly, the third count alleges that the defendant unlawfully entered the victim's residence, "with intent to commit a crime therein, and he or another participant in the crime was armed with a deadly weapon; to wit, a handgun," thus committing burglary in the first degree in violation of General Statutes § 53a-101 (a) (1). The first count, charging felony murder in violation of General Statues § 53a-54c, alleges, without reference to any deadly weapon, that the defendant "did commit or attempt to commit a robbery of [the victim] and burglary of his residence, and, in the course of and in furtherance of said crimes he, or another participant in the crimes, caused the death" of the victim.

---

those predicate felonies were committed. In the present case, having expressly relied on the provisions of General Statutes §§ 53a-134 (a) (2) and 53a-101 (a) raising simple robbery and burglary to first degree crimes when a defendant is "armed with a deadly weapon," the state could not have claimed that the commission of robbery and burglary in some other manner might have satisfied alternative enhancement provisions of our first degree robbery and first degree burglary statutes.

Since, as the majority acknowledges, we are limited to the charging documents and specified statutes in applying the *Blockburger* test in this state; *State* v. *Martin,* 187 Conn. 216, 222, 445 A.2d 585 (1982); it clearly was possible for the defendant to have committed felony murder in the manner charged in the first count without either him or his companion being armed, as alleged in the second count of robbery in the first degree and in the third count of burglary in the first degree. In this information neither first degree robbery nor first degree burglary is included in the felony murder charge, because that offense *could* have been committed without violating § 53a-134 (a) (2) or § 53a-101 (a) (1) in the manner alleged in the second and third counts, both of which require that the offender or another participant be armed. The contrary view of the majority is wholly at variance with our precedent on this subject. *State* v. *Dolphin,* 203 Conn. 506, 518, 525 A.2d 509 (1987) (robbery in the first degree while armed with a deadly weapon does not include robbery in the second degree requiring the display, use or representation of a deadly weapon); *State* v. *Franko,* 199 Conn. 481, 495, 508 A.2d 22 (1986) ("sexual assault in the second degree is an offense separate and distinct from sexual assault in the first degree").

As the information plainly sets forth three separate offenses, none of which is included in another, the trial court was authorized to impose the maximum sentence provided by each of the three statutes involved, §§ 53a-54c, 53a-134 (a) (2) and 53a-101 (a) (1), for a cumulative total of one hundred years imprisonment, as the majority has concluded. It is unnecessary, therefore, to consider the ground of affirmance upon which the majority relies, that the legislature has manifested an intention to punish each of these offenses separately

even if they were included in the felony murder charge under the *Blockburger* test. That issue raises problems of multiplicity and notice that are best left to another time when we are presented with an information not plainly alleging separate and distinct offenses. See *State v. Cimino,* 33 Conn. Sup. 680, 684–85, 366 A.2d 1168 (1976).

Accordingly, I concur in the judgment.