## STATE OF CONNECTICUT *v.* JEFFREY SMITH
### (AC 28708)

Bishop, Gruendel and Harper, Js.

---

Argued February 11—officially released May 20, 2008

*Glenn W. Falk*, special public defender, for the appellant (defendant).

internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 650, 858 A.2d 767 (2004).

*Michael L. Regan,* state's attorney, with whom, on the brief, was *Peter A. McShane,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Jeffrey Smith, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), felony murder in violation of General Statutes § 53a-54c, kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (1). The defendant claims that the trial court improperly admitted evidence of his invocation of his right to remain silent after he had been informed of his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We affirm the judgment of the trial court.

This case developed from the police investigation of the defendant's suspected involvement in a murder. On February 10, 1999, two police officers arrived at the defendant's apartment to interview him. The defendant invited them in but denied any involvement in the murder. During the interview, the officers did not inform the defendant of his *Miranda* rights. On February 18, 1999, the same officers returned to the defendant's apartment with a search and seizure warrant for the defendant's palm prints, as prints were recovered from the vehicle that the victim was purported to have been driving on the night of his murder. The defendant accompanied the police to the police station and, after his prints were taken, he agreed to be interviewed again. On this occasion, he was advised of his *Miranda* rights and waived them in writing. Again, the defendant denied any involvement in the murder. On June 18, 1999, the

officers once again returned to the defendant's apartment, this time with a warrant for his arrest for murder. The defendant was orally informed of his *Miranda* rights in conjunction with his arrest at his residence. Once he arrived at the police station, he was again informed of his *Miranda* rights, this time orally and in writing, after which, he agreed to waive those rights. Detective James McGlynn of the state police, one of the officers present during the ensuing interrogation, testified at trial that during the interview, "[the defendant] continued his denial of any involvement in the case. He said that he did not want to talk to the police, that he wouldn't talk to the police [about] what he knew about the murder. He would only talk to the [state's] attorney because the [state's attorney] is the only person that can give him a deal." There was no evidence at trial of any further dialogue between the police and the defendant in conjunction with this interview.

At trial, the defendant filed a motion to suppress the testimony of McGlynn concerning the defendant's statement. At the hearing on the motion, the defendant argued that the testimony was violative of his constitutional rights to counsel and against self-incrimination and that it was ultimately irrelevant to the material issues of the case. The court denied the motion, finding that the defendant had not asserted his fifth amendment right to remain silent. In its oral decision on the motion, the court commented that although a defendant may assert his right to remain silent at any time, here, "it's not that the defendant chose to remain silent, it's that he decided if he was going to cut a deal, so to speak, the person that he needed to talk to was the [state's attorney]." Furthermore, the court found that a jury could determine that the June 18, 1999 statement was indicative of the defendant's "[need] to cut a deal," and, therefore, it was probative of his guilt. We agree with the court.

Ultimately, the defendant was convicted of manslaughter in the first degree, felony murder, two counts of kidnapping in the first degree and robbery in the first degree, and acquitted of capital felony and murder. At his sentencing, the defendant filed a motion for a new trial, claiming in part that he was "deprived of his rights against self-incrimination by the admission of an alleged custodial statement that he would speak only to a [state's] attorney." The court denied the motion and sentenced the defendant to a total effective term of eighty-five years imprisonment. This appeal followed.

The defendant claims that the court improperly allowed McGlynn to testify regarding the statement made on June 18, 1999. Specifically, the defendant claims that the statement was a post-*Miranda* invocation of his right to remain silent and that it was improperly admitted in contravention of his fifth and fourteenth amendment rights against self-incrimination and to due process.

At the outset, we set forth our standard of review for the defendant's claim. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001).

Any inquiry into the admissibility of a statement obtained while a defendant is in custody must, of course, begin with *Miranda* v. *Arizona*, supra, 384 U.S. 444. In that case, the United States Supreme Court held that the fifth and fourteenth amendments' prohibition

against compelled self-incrimination requires that a suspect in police custody be informed specifically of his or her right to remain silent and to have an attorney present before being questioned. Id., 479. The court further held that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease"; id., 473–74; and that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Id., 474. Furthermore, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id., 475.

Building on the protections provided in *Miranda*, the United States Supreme Court held in *Doyle* v. *Ohio*, 426 U.S. 610, 619–20, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), that it is a violation of a defendant's right to due process to use his silence, following receipt of *Miranda* warnings, for impeachment purposes. The holding in *Doyle* is grounded in two bases—first, that silence in the wake of a *Miranda* warning is "insolubly ambiguous" and consequently of little probative value, and, second, that a *Miranda* warning carries an implicit assurance that silence will carry no penalty. Id., 617–18. Furthermore, the protected silence is not limited to muteness and "includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." *Wainwright* v. *Greenfield*, 474 U.S. 284, 295 n.13, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986); *State* v. *Cabral*, 275 Conn. 514, 524, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

The defendant argues that his June 18, 1999 statement that he did not want to talk with the police and would

talk only with the state's attorney because he, alone, could give him a deal, was an invocation of his right to remain silent and is, therefore, protected by *Doyle* and its progeny. Thus, he claims, the statement should not have been admitted. The defendant argues that the statement was at most a conditional waiver of the right to remain silent, and, in the face of this ambiguity, the court should have construed its interpretation in favor of his right to remain silent.

There is no particular prescription for behavior or words that amounts to an expression of a defendant's right to remain silent. Voluntary statements made to the police during a post-*Miranda* interrogation are admissible as long as the record contains no evidence of threats, promises or coercive or deceptive measures by the police. *State* v. *Williams*, 65 Conn. App. 59, 74–76, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). Additionally, a defendant does not have the right to remain "selectively silent," and the refusal of a defendant to answer a particular question during a custodial interrogation is not an invocation of the right to remain silent. *State* v. *Talton*, 197 Conn. 280, 295–96, 497 A.2d 35 (1985); *State* v. *Comancho*, 92 Conn. App. 271, 281, 884 A.2d 1038 (2005), cert. denied, 276 Conn. 935, 891 A.2d 1 (2006).

As noted, the defendant was informed properly of his rights pursuant to *Miranda* before the officers began to interview him on June 18, 1999. The defendant initialed and signed a waiver of each of his rights prior to questioning. When asked about the murder, he maintained that he was not involved. There is no evidence in the record that the police acted in a coercive or threatening manner during questioning. After repeatedly asserting that he was not involved, the defendant indicated that he did not want to talk to the police and immediately clarified that statement by stating that he would speak only to the state's attorney, who could

give him "a deal." This statement was not in response to any question posed by the police after the defendant stated that he did not want to talk with them. It was unprovoked. In this light, the defendant's statement that he did not want to talk with the police reasonably could be seen as conditional. Instead of simply refusing to speak to the police, the defendant conditioned his silence, stating a preference to speak to the state's attorney. Therefore, we agree with the court that the defendant did not invoke his right to remain silent by this statement but, rather, was expressing a choice regarding with whom he would prefer to speak. Consequently, the proscription set forth in *Doyle* is inapplicable. See *Doyle* v. *Ohio*, supra, 426 U.S. 619–20.

The defendant cites *State* v. *Plourde*, 208 Conn. 455, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989), in support of his contention that his statement was an assertion of his right to remain silent, at least until he spoke with the state's attorney and decided to cooperate. The defendant in *Plourde*, however, consistently refused to waive his rights and, when he spoke, specifically conditioned any statement or deal on his ability to speak with his attorney first. Id., 464–65. The facts at hand are readily distinguishable from *Plourde*. In this case, the defendant repeatedly waived his rights knowingly and voluntarily. Furthermore, he did not request the assistance of counsel; rather, he requested the opportunity to speak with someone who might make speaking worth his while.

As the statement was not an invocation of the defendant's right to remain silent, the next level of analysis is whether the statement was relevant to a material issue in the case. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other

fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 261–62, 796 A.2d 1176 (2002). Here the statement is one that reasonably could be viewed as inculpatory. It follows, therefore, that the court acted properly in admitting the statement.

The judgment is affirmed.

In this opinion the other judges concurred.