******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY SMITH
(AC 40398)

DiPentima, C. J., and Lavine and Bishop, Js.

*Syllabus*

The defendant, who had been convicted of two counts of the crime of
kidnapping in the first degree, and of felony murder, robbery in the first
degree, and manslaughter in the first degree, appealed from the trial
court's denial of his motion to correct an illegal sentence. *Held*:

1. The defendant's claim that his sentence violated his fifth amendment
protection against double jeopardy was unavailing: the defendant's sen-
tence for both felony murder and the underlying offenses of kidnapping
and robbery did not violate double jeopardy, as the legislature clearly
intended multiple punishments for felony murder and the predicate
offenses, and although a conviction for felony murder and manslaughter
required proof that the defendant caused the victim's death, there was
no such requirement for the counts charging robbery and kidnapping;
furthermore, although the defendant was convicted of two counts of
kidnapping of a single victim, each count alleged a violation of a different
subdivision of the kidnapping statute (§ 53a-92 [a] [2] [A] and [B]), which
were separate offenses for double jeopardy purposes given that they
each required proof of a fact that the other did not.

2. The trial court did not abuse its discretion in denying the defendant's
motion to correct an illegal sentence and determining that the sentencing
court did not improperly merge the defendant's convictions for felony
murder and manslaughter in the first degree instead of vacating the
manslaughter conviction; although the defendant claimed that vacatur
was required pursuant to *State* v. *Polanco* (308 Conn. 242), which estab-
lished that the proper remedy for a defendant convicted of greater and
lesser included offenses in violation of double jeopardy was vacatur
and not merger, and *State* v. *Miranda* (317 Conn. 741), which extended
the rule of *Polanco* to cases involving cumulative homicide convictions
arising from the killing of a single victim, the rules announced in *Polanco*
and *Miranda* did not apply retroactively to the defendant's sentence,
as the defendant's conviction had long been final at the time when the
rules in *Polcano* and *Miranda* were established, and both *Polanco* and
*Miranda* involved the exercise of our Supreme Court's supervisory
authority and announced rules that were based strictly on policy consid-
erations that did not carry constitutional implications.

Argued December 7, 2017—officially released March 27, 2018

*Procedural History*

Substitute information charging the defendant with
two counts of the crime of kidnapping in the first
degree, and with the crimes of capital felony, murder,
felony murder and robbery in the first degree, brought
to the Superior Court in the judicial district of New
London and tried to the jury before the court, *Schimel-
man, J.*; verdict and judgment of guilty of two counts
of kidnapping in the first degree, and of felony murder,
robbery in the first degree and the lesser included
offense of manslaughter in the first degree; thereafter,
the court, *Strackbein, J.*, denied the defendant's motion
to correct an illegal sentence, and the defendant
appealed. *Affirmed.*

*Jeffrey Smith*, self-represented, the appellant
(defendant).

*Michael L. Regan*, state's attorney, for the appellee

(state).

*Opinion*

BISHOP, J. The defendant, Jeffrey Smith, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant argues that the court abused its discretion in denying his motion. Specifically, the defendant claims that his sentence violates his fifth amendment protection against double jeopardy, which is applied to the states through the fourteenth amendment to the United States constitution. The defendant also argues that the principles our Supreme Court established in *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), and *State* v. *Miranda*, 317 Conn. 741, 120 A.3d 490 (2015), should be applied retroactively to the circumstances of his case. We affirm the judgment of the trial court.

The court's memorandum of decision sets out the relevant facts and procedural history. "The defendant . . . was charged in a six count information dated July 9, 2001, with capital felony . . . in violation of [General Statutes (Rev. to 1997) § 53a-54b (5)], murder in violation of [General Statutes (Rev. to 1997) § 53a-54a], felony murder in violation of [General Statutes (Rev. to 1997)] § 53a-54c, [two counts of] kidnapping in the first degree . . . in violation of [General Statutes §§] 53a-92 (a) (2) (A) [and (B)] and robbery in the first degree in violation of [General Statutes] § 53a-134 (a) (1).[1]

"On August 18, 2005, after a jury trial before the *Hon. Stuart Schimelman*, the jury returned verdicts of guilty on felony murder, manslaughter [in the first degree in violation of General Statutes § 53a-55], both kidnapping counts and the robbery count. [The defendant] was acquitted on capital felony and murder.[2]

"The trial court merged the conviction on manslaughter with the felony murder [conviction] and sentenced the defendant to sixty years [of] imprisonment. The defendant was also sentenced to concurrent sentences of twenty-five years on each kidnapping count concurrently and twenty years on the robbery count all concurrent to each other but consecutive to the felony murder sentence. The total effective sentence was eighty-five years to serve." (Footnotes added.)

On August 6, 2015, the defendant, representing himself,[3] filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22, and filed an amended motion on November 10, 2015. In his motions, the defendant made the following claims to support his double jeopardy argument: (1) he was unconstitutionally charged with three homicide offenses for a single act of homicide; (2) his acquittal on the capital felony charge barred prosecution on the kidnapping charges because the capital felony incorporated the kidnapping counts; (3) he was unlawfully convicted of felony murder as well as the underlying predicate offenses of kidnapping and robbery; (4) he was unlawfully convicted of two

counts of kidnapping for a single act of kidnapping; and (5) the court's merger of the felony murder and manslaughter convictions was improper under *Polanco* and *Miranda*, and the court instead should have vacated the manslaughter conviction. For relief, the defendant requested that the court vacate the conviction as to the offenses that he alleged violated double jeopardy and release him on the basis of time served on the robbery conviction.

The court denied the defendant's motion on June 27, 2016. In its decision, the court stated: "The defendant believes that the [s]tate cannot charge him with multiple counts of murder and/or kidnapping. This is erroneous. The information in a criminal prosecution may charge various aspects of the crimes alleged. The jury, after hearing the evidence and the instructions to the jury by the judge may find a defendant guilty or not guilty on any or all of the charges. Here, the jury found the defendant guilty of felony murder, manslaughter, robbery and two counts of kidnapping. The jury did not find the defendant guilty of capital felony and murder. The defendant erroneously believes [that] an acquittal on capital felony murder should exonerate him on all counts of murder. The elements of the charges for which the defendant was found guilty were met and the judge sentenced him accordingly." The court also determined that, based on principles of retroactivity, "the 2013 decision in *Polanco* and 2015 decision in *Miranda*, which were based on our Supreme Court's supervisory authority, do not apply retroactively to the defendant's case." This appeal followed.

"We review claims that the court improperly denied the defendant's motion to correct an illegal sentence under an abuse of discretion standard. . . . The jurisdiction of the sentencing court terminates when the sentence is put into effect, and that court may no longer take any action affecting the sentence unless it has been expressly authorized to act. . . . The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. . . . An illegal sentence is essentially one which exceeds the relevant statutory maximum limits, violates the defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Citations omitted; internal quotation marks omitted.) *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003).

I

On appeal, the defendant argues that the court abused its discretion in denying his motion to correct an illegal sentence and he asserts several claims to support the alleged double jeopardy violations. The state responds that the defendant's double jeopardy arguments are

without merit. We agree with the state.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . . Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses [the] protection against double jeopardy. . . .

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . .

"Traditionally we have applied the *Blockburger* [v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Nixon*, 231 Conn. 545, 549–51, 651 A.2d 1264 (1995).

"[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. . . . Double jeopardy protection against cumulative punishments is only designed to ensure that the sentencing discretion of the courts is confined to the limits established by the legislature. . . . Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial. . . . The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . The language, structure and legislative history of a statute can provide evidence of this intent." (Citations omitted; internal quotation marks omitted.)

*State* v. *Greco*, 216 Conn. 282, 292–93, 579 A.2d 84 (1990). A defendant properly may be convicted and sentenced for the crimes of felony murder and the predicate offenses. See id., 297–98; see also *State* v. *Gonzalez*, 302 Conn. 287, 318, 25 A.3d 648 (2011).

The defendant's double jeopardy claim fails with respect to the convictions for felony murder and its predicate offenses. In *State* v. *Greco*, supra, 216 Conn. 297, our Supreme Court concluded that the legislature clearly intended multiple punishments for felony murder and the underlying predicate offenses. This conclusion relieves us of the need to apply the *Blockburger* test to this aspect of the defendant's claim. See id., 292–93. Therefore, the defendant's kidnapping and robbery convictions do not violate double jeopardy even though they are the predicate offenses for the defendant's felony murder conviction.[4]

The defendant's alleged double jeopardy violations regarding his remaining convictions lack merit because each crime with which the defendant was charged and of which he was convicted requires proof of a fact that the others do not. For example, the capital felony count pursuant to § 53a-54b (5) requires proof of an intent to kill. In contrast, a conviction for manslaughter in the first degree and felony murder, in violation of §§ 53a-55 and 53a-54c, respectively, does not require proof of such an intent and, instead, requires proof that the defendant caused the victim's death. It goes without saying that the kidnapping and robbery counts neither require proof of an intent to kill nor proof that the defendant caused the victim's death. See General Statutes §§ 53a-92 (a) (2) (A) and (B) (kidnapping in first degree) and 53a-134 (a) (1) (robbery in first degree).

Finally, we reject the defendant's claim that his convictions for two counts of kidnapping of a single victim violate double jeopardy. The defendant was convicted of one count under § 53a-92 (a) (2) (A), and one count under § 53a-92 (a) (2) (B).[5] Our Supreme Court has held that subdivisions (A) and (B) are separate offenses for double jeopardy purposes. *State* v. *Tweedy*, 219 Conn. 489, 496, 594 A.2d 906 (1991) ("the charged crimes of kidnapping in the first degree under subdivisions [A] and [B] of § 53a-92 [a] [2] are separate offenses for double jeopardy purposes" because each requires proof of element that other does not). Accordingly, the defendant's claim of a double jeopardy violation is unavailing.

## II

The defendant also claims that the court abused its discretion in denying his motion to correct an illegal sentence because during the sentencing phase, the court merged his convictions for felony murder and manslaughter in the first degree. The defendant argues that *Polanco* and *Miranda* require vacatur, not merger,

when sentencing a defendant for cumulative homicide convictions. The state responds that, because our Supreme Court acted pursuant to its supervisory authority when it established the rules of *Polanco* and *Miranda*, the guidance of these cases does not apply retroactively to the defendant's case. Although our Supreme Court has not addressed the issue of whether *Polanco* and *Miranda* apply retroactively, we conclude that, on the basis of well established principles of retroactivity, *Polanco* and *Miranda* do not apply retroactively and, accordingly, they provide no relief to the defendant.

"It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of the particular trial but also for the perceived fairness of the judicial system as a whole. . . .

"We recognize that this court's supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the rule invoking our use of supervisory power is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide lower courts in the administration of justice in all aspects of the [adjudicatory] process. . . . Indeed, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of [this court's] supervisory powers." (Citations omitted; internal quotation marks omitted.) *In re Yasiel R.*, 317 Conn. 773, 789–90, 120 A.3d 1188 (2015).

"Our Supreme Court has specifically stated: In exercising our supervisory power we have frequently given only prospective effect to changes strictly on policy considerations that do not carry constitutional implications." (Internal quotation marks omitted.) *Holloway* v. *Commissioner of Correction*, 72 Conn. App. 244, 250, 804 A.2d 995, cert. denied, 261 Conn. 944, 808 A.2d 1136 (2002); see also *In re Daniel N.*, 323 Conn. 640, 150 A.3d 657 (2016) (holding retroactive application of rule would exceed scope of supervisory authority). "In the past, we have not been consistent in how we have applied such new rules. In some cases, we have announced rules under the court's supervisory power only prospectively. . . . Yet, in other cases, we have applied such rules retroactively to the facts of the case in which the rule is announced. . . . [T]here has been no rhyme or reason as to when the court has applied a new rule prospectively or retroactively." (Citations omitted; footnote omitted.) *In re Yasiel R.*, supra, 317 Conn. 799–801 (*Zarrella, J.*, concurring in part and dis-

senting in part).

"We undermine the rule of law when we promulgate a new rule under the court's supervisory authority and then reverse a trial court's judgment on the ground that the trial court had failed to comply with that new rule, which did not exist at the time of trial." Id., 802 (*Zarella, J.*, concurring in part and dissenting in part). "Most importantly, whatever the cost to individual litigants of not applying a rule retroactively, it would be vastly outweighed by the benefits of adhering to the rule of law." Id., 804 (*Zarella, J.*, concurring in part and dissenting in part). "Limiting our use of supervisory authority to creating only prospective rules therefore will not constrain our ability to appropriately oversee and administer the system of justice." (Footnote omitted.) Id., 805 (*Zarella, J.*, concurring in part and dissenting in part).

"[J]udgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . [and] this general rule applies to cases that are pending and not cases that have resulted in final judgments." (Internal quotation marks omitted.) *State* v. *Elias G.*, 302 Conn. 39, 45, 23 A.3d 718 (2011). "State convictions are final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari [to the United States Supreme Court] has elapsed or a timely petition has been finally denied." (Internal quotation marks omitted.) *Beard* v. *Banks*, 542 U.S. 406, 411, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004). Where the court has not announced a constitutional procedural rule, it should not be given retroactive application. *Johnson* v. *Warden*, 218 Conn. 791, 797–98, 591 A.2d 407 (1991).

The application of these norms leads us to the conclusion that the rule of *Polanco* and *Miranda* should not be accorded retroactive application. The following additional procedural facts are relevant to this conclusion. The defendant was convicted and sentenced in 2005. After this court affirmed his conviction, our Supreme Court denied his petition for certification in 2008. See *State* v. *Smith*, 107 Conn. App. 746, 946 A.2d 926, cert. denied, 288 Conn. 905, 953 A.2d 650 (2008). There is nothing in the record showing that the defendant filed a petition for a writ of certiorari to the United States Supreme Court, and pursuant to rule 13 of the Rules of the Supreme Court of the United States, such a petition must be filed within ninety days after entry of the judgment by our Supreme Court. Accordingly, when the rules in *Polanco* and *Miranda* were established in 2013 and 2015 respectively, the defendant's 2005 conviction had long been final.

In *State* v. *Polanco,* supra, 308 Conn. 259–60, our Supreme Court exercised its supervisory authority to establish that the proper remedy for a defendant con-

victed of greater and lesser included offenses in violation of double jeopardy was vacatur and not merger. The court concluded that "[i]n the present case . . . we are not inclined to express an opinion on the constitutionality of the merger of convictions approach, specifically, whether after *Rutledge* [v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996)], that approach remains a constitutionally permissible alternative to vacatur. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . . In the present case, invocation of those powers is appropriate, because, first, the jurisprudential underpinnings to this court's approval of the merger approach . . . have since been repudiated, and, second, [that] remedy . . . is now at odds with the remedy utilized almost uniformly by the Circuit Courts of Appeals." (Citations omitted; internal quotation marks omitted.) Id., 256–58. Later, in *State* v. *Miranda*, supra, 317 Conn. 751, the court extended the rule of *Polanco* to cases involving cumulative homicide convictions arising from the killing of a single victim. In so doing, the court cited the same policy considerations that bore on its decision in *Polanco*. See id., 750–53.

The court in *Polanco* expressly declined to opine on the constitutional aspect of the merger of convictions approach. Instead, the court made clear that it was for policy reasons that vacatur was preferred over merger in a situation involving multiple homicide convictions. Similarly, in *Miranda*, the court ruled on the basis of policy, not constitutional considerations. In order to avoid "undermin[ing] the rule of law"; *In re Yasiel R.*, supra, 317 Conn. 802 (*Zarrella*, *J.*, concurring in part and dissenting in part); and because our Supreme Court decided *Polanco* and *Miranda* on the basis of policy considerations, we decline to apply *Polanco* and *Miranda* retroactively in this case. Accordingly, the court did not abuse its discretion in denying the defendant's motion to correct and concluding that the sentencing court did not improperly merge the defendant's convictions for felony murder and manslaughter in the first degree instead of vacating the manslaughter conviction as *Polanco* and *Miranda* now require.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereinafter, unless otherwise indicated, all references to §§ 53a-54a, 53a-54b, and 53a-54c are to the 1997 revision of the statutes.

[2] Although acquitted on the murder charge, the defendant was convicted of the lesser included offense of manslaughter in the first degree.

[3] On November 10, 2015, the Public Defender's Office filed an *Anders* brief, moving to withdraw from representing the defendant on his motion to correct an illegal sentence, concluding that the motion was without merit. See *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). After the court granted counsel's motion to withdraw, the defendant continued to pursue the motion to correct as a self-represented party.

[4] The defendant also argues that his sixty year sentence for felony murder exceeded the statutory maximum. We reject this claim pursuant to *State* v.

*Adams*, 308 Conn. 263, 273, 63 A.3d 934 (2013), which concluded that felony murder was punishable as a class A felony. See id., 274 (The appropriate sentence "for the class A felony of murder, [is] a term not less than twenty-five years nor more than life . . . . General Statutes § 53a-35b, in turn, provides that [a] sentence of life imprisonment means a definite sentence of sixty years . . . ." [Internal quotation marks omitted.]).

[5] General Statutes § 53a-92 (a) provides in relevant part: "A person in guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony . . . ."

───────────────────