******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM LINDER
(AC 38433)

DiPentima, C. J., and Mullins and Mihalakos, Js.

*Argued November 30, 2016—officially released April 11, 2017*

(Appeal from Superior Court, judicial district of New London, geographical area number ten, Newson, J.)

*Justine F. Miller*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Sarah Steere*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, William Linder, appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and strangulation in the second degree in violation of General Statutes § 53a-64bb (a). On appeal, the defendant claims that there was insufficient evidence for the jury to find beyond a reasonable doubt that (1) the defendant was guilty of assault in the third degree and strangulation in the second degree, and (2) the state disproved the defendant's self-defense claim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In September, 2013, the victim met the defendant at a horse rescue farm where she was a volunteer. At the time, the defendant was living at the horse rescue farm, working to cover his room and board. The defendant and victim became friends, and, around March, 2014, the defendant moved into the victim's residence. The understanding was that the arrangement was temporary.

On June 27, 2014, while driving from the horse rescue farm to the victim's residence, the victim and the defendant had an argument; the victim was planning to buy a house, and, although the defendant wanted to move into the new house with her, she told him that he could not. Upon arriving at the victim's residence, the victim and the defendant had dinner, and the victim went to bed around 9 p.m. At approximately midnight, however, the victim awoke because of the amount of noise that the defendant was making. When the victim asked the defendant to be quiet, he became louder, and they began to argue. Thereafter, the victim returned to bed, believing that the defendant was going to sleep on the couch, as he had been doing for the past few months.

The following morning, the victim awoke at approximately 5:30 a.m., at which time she discovered that the defendant was sleeping in her bed. She exited the bedroom to make coffee but, wanting to get to the horse rescue farm early and to wake up the defendant, reentered the bedroom shortly thereafter, whereupon she turned on the lights and jumped on the bed. While jumping on the bed, she grabbed the defendant's arm, began shaking him, and repeatedly told him to "wake up." In response, the defendant sleepily moaned and told the victim to stop. The victim, however, continued to shake the defendant and said, "how do you like it." The defendant then punched the victim in the right eye, causing her to lose consciousness momentarily.

When she regained consciousness, the victim was lying on her back on the bed with the defendant kneeling over her and asking if she was okay. The victim began to yell and tried to get away from the defendant, but

he put both of his hands around her neck and squeezed. After approximately twenty seconds, the defendant released his hold on the victim, and, in an attempt to get away from him, she fell off the bed. When the victim regained her balance, she saw that the defendant was holding her phone, and she insisted that he return it to her so that she could call the police. The defendant handed the victim her phone, and she dialed 911. The time was approximately 5:51 a.m.

When the police arrived, both the defendant and the victim, who was visually upset and crying, were outside the front of the house. The police handcuffed the defendant, read him his *Miranda*[1] rights, and questioned him about what had happened. Although the police did not take a formal statement from the defendant because they had determined that he was the primary aggressor,[2] they took a statement from the victim, took photographs of her injuries, and noted any observed injuries.[3] Thereafter, the victim went to the hospital, where an emergency medicine physician diagnosed her with contusions of the face and neck, and a neck strain.

The defendant was charged with assault in the third degree in violation of § 53a-61 (a) (1),[4] strangulation in the second degree in violation of § 53a-64bb (a),[5] and unlawful restraint in the first degree in violation of General Statutes § 53a-95. Following the conclusion of the state's case, the defendant moved for a judgment of acquittal on the basis of insufficient evidence, which the court denied. Prior to closing arguments, the defendant renewed his motion for judgment of acquittal, which the court again denied. The defendant then was convicted of assault in the third degree and strangulation in the second degree, but found not guilty of the unlawful restraint charge. The defendant received a total effective sentence of three years incarceration, followed by three years of special parole. The defendant then filed this appeal. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence to support his conviction of assault in the third degree and strangulation in the second degree. We disagree.

We first set forth our standard of review. "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support

the jury's verdict. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 32–33, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006).

A

We begin with the defendant's claim that there was insufficient evidence to support his conviction for assault in the third degree. Specifically, the defendant argues that the jury lacked sufficient evidence to find beyond a reasonable doubt that he intended to physically injure the victim because he was not sufficiently awake to form the conscious objective to punch the victim in the eye.[6]

"To establish the crime of assault in the third degree, the state must show that the defendant intentionally . . . caused physical injury to another." *State* v. *Fabricatore*, 89 Conn. App. 729, 733, 875 A.2d 48 (2005), aff'd, 281 Conn. 469, 915 A.2d 872 (2007). Pursuant to General Statutes § 53a-3 (11), "[a] person acts 'intentionally' with respect to a result . . . when his conscious objective is to cause such result . . . ." In the present case, the defendant claims that he was not fully awake at the time of the incident, but, rather, he was reacting spontaneously upon being startled by the victim, and that in his attempt to push the victim aside, his hand

accidentally came into contact with her eye. The jury, however, heard evidence that, although the defendant was asleep when the victim reentered the room, upon being shaken by her, the defendant sleepily moaned and told the victim to stop. The victim did not stop but, rather, continued to shake the defendant and stated, "how do you like it," after which the defendant punched her in the eye. His punch carried such force that the victim temporarily lost consciousness. The jury reasonably and logically could have concluded that, by verbally reacting to the victim's shaking him and by subsequently hitting her with such force as to knock her unconscious, the defendant was awake at the time of the incident. In turn, the jury reasonably could have concluded that he was sufficiently conscious to form the objective to punch the victim. Construing the evidence in the light most favorable to sustaining the verdict, we conclude that sufficient evidence existed from which the jury could have found beyond a reasonable doubt that the defendant committed assault in the third degree.

B

The defendant next claims that there was insufficient evidence to support his conviction for strangulation in the second degree. Specifically, the defendant argues that the jury lacked sufficient evidence to find beyond a reasonable doubt that he caused physical injury to the victim by impeding her ability to breathe.[7]

To establish strangulation in the second degree, the state must show that the defendant restrained the victim by the neck or throat with the intent to impede her ability to breathe, and such impediment must have occurred. General Statutes § 53a-64bb. In the present case, the jury heard evidence that the defendant wrapped his hands around the victim's neck and squeezed. This occurred for approximately twenty seconds. Although the victim was able to speak to the 911 dispatcher shortly thereafter, her voice was hoarse and it hurt to swallow. At the hospital, the emergency medicine physician did not find bruises on the back of the victim's neck, petechiae hemorrhaging in her eyes, swelling around her vocal cords, or fractures, and, as a result, the defendant claims that he did not harm the victim in a manner consistent with strangulation. The emergency medicine physician, however, determined that the victim suffered bruising around the front of her neck, tenderness at the back of her neck, and a hoarse voice, all of which he testified are consistent with strangulation. On the basis of this evidence, the jury reasonably and logically could have concluded that, when the defendant wrapped his hands around the victim's neck and squeezed, she was unable to breathe. Construing the evidence in the light most favorable to sustaining the verdict, we conclude that sufficient evidence existed from which the jury could have found

beyond a reasonable doubt that the defendant committed strangulation in the second degree.

## II

The defendant also claims that the state presented insufficient evidence to disprove his self-defense claim beyond a reasonable doubt. Specifically, the defendant argues that the circumstances of the altercation between himself and the victim justified the defendant's reasonable belief that he was about to suffer imminent physical force, and, therefore, his use of force that resulted in the victim's being punched in the eye was objectively reasonable.[8] The defendant's argument rests, however, upon a competing interpretation of the evidence that the jury rejected. We conclude that the jury's rejection of the defendant's interpretation was reasonable, and, accordingly, the defendant's claim fails.

Pursuant to General Statutes § 53a-19 (a), "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such a degree of force which he reasonably believes to be necessary for such purpose . . . ." Once the defendant has "[introduced] sufficient evidence to warrant presenting his claim of self-defense to the jury . . . it becomes the state's burden to disprove the defense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009). "Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . Accordingly, the standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state has met its burden of persuasion, the verdict will be sustained." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 159 Conn. App. 618, 622–23, 123 A.3d 142, cert. denied, 319 Conn. 951, 125 A.3d 530 (2015). "[Therefore] [o]n appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) Id., 623.

In the present case, the jury was free to believe the testimony of the state's witnesses and to disbelieve that of the defendant. Despite testimony by the defendant that he was acting in self-defense, the jury chose to accept the state's version of the facts. The victim testi-

fied that, before the defendant punched her in the eye, he sleepily moaned and, in response to her shaking him, told her to stop. Moreover, the punch did not occur until after the victim subsequently stated, "how do you like it." In addition, all of the state's witnesses testified that the victim's eye was swollen following the incident. These findings conflict with the account of the defendant, who claimed that he instinctively was using the force necessary from his prone position to push away his unknown attacker.

In crediting the testimony of the state's witnesses, the jury reasonably could have found that the defendant, in his telling the victim to stop shaking him, was fully awake. Furthermore, the testimony of the state's witnesses reasonably could have led the jury to find that, after the victim stated, "how do you like it," the defendant forcefully and intentionally punched her. In turn, from the evidence presented, the jury could have determined that the defendant's alleged belief that physical force was about to be used against him was unreasonable. Accordingly, we conclude that sufficient evidence existed from which the jury reasonably could have found that the state disproved the defendant's self-defense claim beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] According to an officer of the Stonington Police Department, the police generally do not take a statement from the primary aggressor.

[3] The victim gave a second statement at the police station approximately two to three weeks after the incident.

[4] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person . . . ."

[5] General Statutes § 53a-64bb (a) provides in relevant part: "A person is guilty of strangulation in the second degree when such person restrains another person by the neck or throat with the intent to impede the ability of such other person to breathe . . . and such person impedes the ability of such other person to breathe . . . ."

[6] The defendant does not contest that the jury reasonably could have found that the state met its burden as to the defendant's causing physical injury to the victim.

[7] The defendant touches upon the element of intent in his appellate brief, stating that "[he] put his hands on [the victim's] shoulders to calm her and prevent her from hitting him again . . . [and] [p]art of his hands could have pressed on each side of the front of her neck, but he would have done so without any intent to strangle her." Although appearing to suggest that the strangulation was accidental, not intentional, the defendant makes no argument as to the element of intent. We therefore only address strangulation as to the causation of physical injury, which the defendant adequately briefed and argued before this court. See *Strobel* v. *Strobel*, 73 Conn. App. 488, 490, 808 A. 2d 1138, cert. denied, 262 Conn. 928, 814 A.2d 383 (2002) ("[w]e consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]). In any event, there was testimony given by the victim whereby the jury reasonably could have inferred intent on the part of the defendant.

[8] The defendant did not claim self-defense as to the strangulation charge.