******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JAMES HENRY WATSON
## (SC 20400)

Robinson, C. J., and McDonald, D'Auria, Ecker and Vertefeuille, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2015) § 53a-64bb (b)), "[n]o person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident . . . ."

Convicted of assault in the third degree, unlawful restraint in the first degree, strangulation in the second degree, and threatening in the second degree, the defendant appealed to the Appellate Court. The defendant and the victim had been socializing and drinking together in an apartment building in which the defendant lived. When the victim indicated that she need to go to the bathroom, the defendant told her that he could use his bathroom. When the victim finished using the bathroom, the defendant prevented her from leaving, restrained her and, over the course of eight or nine hours, alternated between hitting and choking her in various areas of his apartment. After the jury returned its verdict, the defendant moved for a judgment of acquittal on the assault and unlawful restraint charges on the ground that they were "upon the same incident" as the strangulation charge for purposes of § 53a-64bb (b). The trial court denied the motion, concluding that the evidence was sufficient to support the jury's verdict because the incident occurred over an extended period of time and the acts of assault and unlawful restraint were readily separable from the acts of strangulation. The Appellate Court affirmed the judgment of conviction, and the defendant, on the granting of certification, appealed to this court, claiming, inter alia, that the language in § 53a-64bb (b) prohibiting a person from being found guilty of strangulation in the second degree "upon the same incident" as unlawful restraint or assault is an element of the offense of strangulation that must be found by the jury beyond a reasonable doubt, rather than by the trial court, pursuant to *Apprendi* v. *New Jersey* (530 U.S. 466). *Held* that the Appellate Court correctly concluded that the defendant's constitutional right to a jury trial was not violated when the trial court, rather than the jury, determined that the assault and unlawful restraint charges were not "upon the same incident" as that giving rise to the strangulation charge, as that determination did not implicate the constitutional principles underlying *Apprendi* and its progeny: the core concern of *Apprendi* and its progeny is to safeguard the constitutional rights of a criminal defendant to a jury determination that he or she is guilty of every element of the crime charged beyond a reasonable doubt, those cases generally define an element as any fact, other than a prior conviction, that increases the maximum punishment that may be imposed on a defendant, and whether a fact constitutes an element is informed by whether the jury had a historical role in finding that fact; in the present case, an analysis of the statutory design revealed that the "upon the same incident" prohibition in § 53a-64bb (b) did not constitute an element within the scope of *Apprendi*, as that language was not included in subsection (a) of the statute, which defines the crime of second degree strangulation and its three elements, or in subsection (c), which classifies that offense as a class D felony, but was included in subsection (b), a separate, procedural subsection that included no act, mental state, or attendant circumstances that must be present for the crime to occur; moreover, the legislature routinely has employed, and this court consistently has interpreted, the same "upon the same incident" language or similar language in other penal statutes to express the intention to bar multiple punishments for double jeopardy purposes, and this court was aware of no evidence that juries historically played any role in resolving double jeopardy issues, which the applicable rule of practice (§ 42-20) commits to the judicial authority for resolution; furthermore, in light of the evidence that the defendant attacked the victim in multiple locations in the apartment over an extended period of time and that, in addition to restraining the victim by the throat, he punched her and prevented

her from leaving the apartment, the trial court correctly determined that the defendant's conduct was readily separable and sufficient to support the jury's verdict as to each of the offenses, that determination did not increase the defendant's sentencing exposure, and the defendant's total effective sentence fell within the maximum sentence he could receive for the crimes of which he was convicted.

Argued November 18, 2020—officially released June 29, 2021*

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, strangulation in the second degree, assault in the third degree, unlawful restraint in the first degree and threatening in the second degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty of strangulation in the second degree, assault in the third degree, unlawful restraint in the first degree and threatening in the second degree, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Keller* and *Noble, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. A jury found the defendant, James Henry Watson, guilty of three distinct crimes in connection with his attack on a single victim over the course of an eight or nine hour period on a single day in October, 2016, namely, assault in the third degree in violation of General Statutes § 53a-61 (a) (1), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and strangulation in the second degree in violation of General Statutes (Rev. to 2015) § 53a-64bb (a).[1] This verdict implicates the provision in § 53a-64bb (b) providing in relevant part that "[n]o person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident . . . ." The trial court determined that the jury's findings were not "based upon the same incident" and rendered a judgment of conviction on all three counts in accordance with the jury's verdict. The defendant appealed on the ground that the prohibition in § 53a-64bb (b) designates an element of the offense of strangulation that must be decided by the jury. See *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

In this certified appeal,[2] we consider whether the Appellate Court correctly concluded that the defendant's constitutional right to a jury trial was not violated when the trial court rather than the jury determined that the charges of assault in the third degree and unlawful restraint in the first degree were not "upon the same incident" as that giving rise to the charge of strangulation in the second degree. See *State* v. *Watson*, 192 Conn. App. 353, 361, 217 A.3d 1052 (2019). We affirm the judgment of the Appellate Court.

I

The jury could reasonably have found the following facts.[3] On October 19, 2016, at approximately 3 p.m., the defendant, the victim and some others were "hanging out" and drinking beer on the front porch of the Bridgeport apartment building where the defendant lived. When the victim said that she needed to use the bathroom, the defendant told her that she could use his bathroom upstairs. The defendant let her into his apartment, and the victim went into the bathroom. When she was finished, she opened the bathroom door, but the defendant blocked her exit and said, "I'm going to get some of your fucking pussy." The defendant allowed the victim to leave the bathroom, but he used his body to block the apartment's exit, forcing her into the living room. He closed the curtains, grabbed the victim, and pushed her onto the smaller of the two sofas in the living room. She tried to push him off her, but he held her down, pulled off her pants and ripped off her underpants. Then he punched her and hit her in the face.

The defendant continued his assault, alternating between hitting the victim in the face and choking her. The victim described the defendant's conduct as following a pattern. He would choke her until she could not breathe, at which point she began kicking her feet, causing the defendant to loosen his chokehold a bit. Then he would resume choking and hitting her. At one point during this lengthy sequence of events, the defendant said, "I want to kill you," and, "I know I'm going to pay for this." The victim tried to fight back and pleaded with the defendant to return her cell phone, which he had taken from her, telling him that she wanted to call her son. The defendant refused to give the victim her phone and continued to hit her repeatedly. In an attempt to resist the defendant, the victim bit his pinky finger. She also tried to run toward the door in order to escape from the apartment, but the defendant prevented her from doing so by grabbing the hood of the sweatshirt she was wearing.

The defendant then moved the victim to his bedroom. He threw her on the bed and again choked and beat her. He removed her T-shirt, which she wore under the sweatshirt, and choked her with it. The defendant told her repeatedly that he wanted to kill her. The defendant moved the victim back to the living room and threw her onto the larger sofa. He resumed beating and choking her. The defendant finally stopped choking and beating the victim, but he continued to prevent her from leaving the apartment.

Many hours later—sometime after midnight—the victim, hoping to find a chance to escape, told the defendant that she wanted a type of drink called an Icee, which was sold at a nearby convenience store. He agreed and accompanied her out of the apartment. Once outside the building, the victim was able to flee. She flagged down a passing ambulance, which brought her to the hospital, where she received medical attention and spoke with the police.

The state charged the defendant with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) (sexual assault), assault in the third degree in violation of § 53a-61 (a) (1) (assault), unlawful restraint in the first degree in violation of § 53a-95 (a) (unlawful restraint), strangulation in the second degree in violation of § 53a-64bb (a) (strangulation), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) (threatening). Following a jury trial, the defendant was found guilty of strangulation, assault, unlawful restraint, and threatening, and found not guilty of sexual assault. Prior to the sentencing hearing, the court directed the parties to submit memoranda addressing whether and to what extent § 53a-64bb (b) applies in the present case and, if so, the appropriate remedy to be implemented by the court at the time of sentencing.

In response to the court's order, the defendant filed a motion for a judgment of acquittal as to the charges of assault and unlawful restraint. He contended that the court was required to acquit him of those two charges pursuant to § 53a-64bb (b) because the entire sequence of events giving rise to the charges against him constituted a single transaction and therefore triggered the statute's prohibition against such guilty verdicts "upon the same incident . . . ."[4] In response, the state argued that the prohibition contained in § 53a-64bb (b) was not implicated because the jury's verdict finding the defendant guilty of unlawful restraint, assault and strangulation was supported by sufficient evidence establishing that the defendant committed separate acts supporting each of the distinct offenses.

The court denied the defendant's motion for a judgment of acquittal on the ground that the evidence was sufficient to support the jury's verdict of guilty as to the counts of assault, unlawful restraint and strangulation. The court explained: "This is not a situation [in which] the factual predicates for the convictions were so intertwined under any view of the evidence, temporally or physically or otherwise . . . as to make them, as a matter of law, one and the same incident." The court emphasized that the defendant's actions took place over an extended period of time and that the acts of assault and unlawful restraint were readily separable from the acts of strangulation. Consistent with its ruling on the motion, the court sentenced the defendant on each of the counts of conviction, imposing "a total effective term of twelve years of incarceration, execution suspended after seven years of mandatory incarceration, followed by three years of probation." *State* v. *Watson*, supra, 192 Conn. App. 361; see footnote 13 of this opinion.

The defendant appealed to the Appellate Court, claiming, among other things, that the federal constitution required that the jury, not the trial court, determine whether the charges of assault in the third degree and unlawful restraint in the first degree were "upon the same incident" as the charge of strangulation in the second degree. General Statutes § 53a-64bb (b); see *State* v. *Watson*, supra, 192 Conn. App. 361. The Appellate Court disagreed with the defendant's claim and held that, because there was no constitutional violation, the defendant's unpreserved claim failed on the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See *State* v. *Watson*, supra, 363. The court relied on its decision in *State* v. *Morales*, 164 Conn. App. 143, 160, 136 A.3d 278, cert. denied, 321 Conn. 916, 136 A.3d 1275 (2016), to conclude that, "in the present case, it was proper for the trial court, rather than the jury, to determine whether the charges were 'upon the same incident' for the purposes

of § 53a-64bb (b)." *State* v. *Watson*, supra, 365. This certified appeal followed.

## II

## A

The defendant argues that the language in § 53a-64bb (b) prohibiting a person from being found guilty of strangulation in the second degree "upon the same incident" as unlawful restraint or assault sets forth an element of the offense of strangulation and, therefore, presents a factual issue that must be decided by a jury pursuant to *Apprendi*. See *Apprendi* v. *New Jersey*, supra, 530 U.S. 490 (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). We disagree.

As the Appellate Court correctly observed, because the defendant did not object to the trial court determining whether the charges of assault and unlawful restraint were "upon the same incident" as the charge of strangulation, his claim is not preserved for appeal, and review is available, if at all, pursuant to *Golding*.[5] See *State* v. *Watson*, supra, 192 Conn. App. 363. Applying the *Golding* analysis, we conclude, as did the Appellate Court, that the record is adequate for review and the issue is one of constitutional magnitude, but the defendant's claim fails because there was no constitutional violation.

The core concern of *Apprendi* and its progeny is to safeguard the constitutional rights entitling "a criminal defendant to a jury determination that [he or she] is guilty of every element of the crime . . . charged, beyond a reasonable doubt." (Internal quotation marks omitted.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 477. In particular, *Apprendi* involved application of this principle to ensure that a jury, not a judge, finds any fact that increases the length of a defendant's sentence. See id., 490. The defendant in *Apprendi* was convicted of possession of a firearm for an unlawful purpose in violation of N.J. Stat. Ann. § 2C:39-4 (a) (West 1995), an offense that carried a maximum penalty of ten years. See id., 468. A separate statute, N.J. Stat. Ann. § 2C:44-3 (e) (West Supp. 1999–2000), authorized the trial court to impose an extended term of imprisonment of between ten and twenty years if the court found by a preponderance of the evidence that the defendant "acted with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity." (Internal quotation marks omitted.) Id., 468–69. The state defended the procedure on the basis that the trial court's finding pertained, not to whether the state had proven an element of an offense, but to the imposition of a sentencing factor. See id., 492.

The court rejected that argument and held that the

procedure violated the sixth and fourteenth amendments to the federal constitution. See id., 475–76. In its analysis, the court reviewed the historical foundations of the "indisputabl[e]" right enjoyed by a criminal defendant to have a jury make those findings necessary to establish the defendant's guilt beyond a reasonable doubt as to every element of the crime charged. Id., 477. The court explained that the "distinction between an 'element' . . . and a 'sentencing factor' was unknown" when our nation was founded. Id., 478. Judges at that time had little discretion in sentencing— the jury's verdict essentially determined the nature and extent of the punishment. See id., 478–79. Therefore, "[j]ust as the circumstances of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment." Id., 480.

The court in *Apprendi* reviewed its own precedent on the subject, including the landmark case *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), in which the court held that "the [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id., 364; see *Apprendi* v. *New Jersey*, supra, 530 U.S. 477–78, 484–88. If the historical foundations of the reasonable doubt standard left any doubt that its protections extended to the length of a defendant's sentence, the court stated, *In re Winship* and its progeny made it "clear beyond peradventure" that the constitutional protection extended to the circumstances mandating a particular punishment. *Apprendi* v. *New Jersey*, supra, 484; see, e.g., *Mullaney* v. *Wilbur*, 421 U.S. 684, 699, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) (rejecting narrow, formalistic reading of *In re Winship* in favor of extending its protections to determinations that went to length of defendant's sentence).

*Apprendi* holds that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* v. *New Jersey*, supra, 530 U.S. 490. Following *Apprendi*, in *Sattazahn* v. *Pennsylvania*, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003), the court offered additional insight into the connection between elements of the offense and the *Apprendi* rule: "Our decision in *Apprendi* . . . clarified what constitutes an 'element' of an offense for purposes of the [s]ixth [a]mendment's [jury trial] guarantee. Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact—no matter how the [s]tate labels it—constitutes an element, and must be found by a jury beyond a reasonable doubt." Id., 111. Under *Apprendi*, therefore, a fact that increases a

defendant's punishment beyond the statutory maximum constitutes an element of the offense.

In subsequent decisions, the United States Supreme Court has clarified the contours of the *Apprendi* rule. For example, in the context of sentencing guidelines, a trial court properly may make factual findings and exercise its discretion to select a specific sentence within a defined range supported by the jury's verdict without violating a defendant's constitutional right to a jury trial. See *United States* v. *Booker*, 543 U.S. 220, 233, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). On the other hand, the court has repeatedly rejected the proposition that facts found by the court may properly support a sentence outside the range supported by the jury's verdict. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." (Citations omitted; emphasis omitted.) *Blakely* v. *Washington*, 542 U.S. 296, 303–304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); see also *Cunningham* v. *California*, 549 U.S. 270, 274–75, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007) (holding that California's sentencing scheme, which authorized judges to find facts in support of applying upper sentencing range, as opposed to lower or middle range defined for offense, violated *Apprendi*).

The United States Supreme Court has also extended the *Apprendi* rule to judicial fact-finding that triggers mandatory minimum sentences. See *Alleyne* v. *United States*, 570 U.S. 99, 108, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) ("*Apprendi*'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor"); see also *United States* v. *Haymond*, U.S. , 139 S. Ct. 2369, 2381, 204 L. Ed. 2d 897 (2019) (extending *Alleyne* to imposition of mandatory minimum sentence for violation of conditions of supervised release based on judicially found facts, where mandatory minimum exceeded range authorized by original conviction); cf. *State* v. *Evans*, 329 Conn. 770, 798–99, 189 A.3d 1184 (2018) (rejecting defendant's claim that, under *Apprendi* and *Alleyne*, state was required to prove defendant's lack of drug dependency beyond reasonable doubt to jury because drug dependency, rather than element of offense, was affirmative defense that would mitigate sentence), cert. denied, U.S. , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

Finally, as part of its jury right analysis, the court has emphasized the importance of the historical role played by the jury to set limits on the reach of *Apprendi* in particular contexts. In *Oregon* v. *Ice*, 555 U.S. 160,

163–64, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009), the court held that a sentencing judge's factual findings in support of the imposition of consecutive rather than concurrent sentences did not violate the defendant's constitutional right to a jury trial. In rejecting the defendant's argument that *Apprendi* precluded judicial fact-finding in support of the imposition of consecutive sentences, the court relied heavily on the fact that the jury historically "played no role in the decision to impose sentences consecutively or concurrently." Id., 168. The court observed that the decision to impose consecutive sentences has rested in the sound discretion of trial judges since before the founding of our nation. See id., 168–69. Accordingly, "[t]here is no encroachment . . . by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the [s]tate and the accused." Id., 169. The scope of the constitutional right to a jury trial, the court explained, "must be informed by the historical role of the jury at common law." Id., 170.

B

In the present case, the Appellate Court relied largely on its holding in *State* v. *Morales*, supra, 164 Conn. App. 143, to conclude that *Apprendi* did not require the jury, rather than the trial judge, to determine whether the strangulation conviction was part of the "same incident" as the unlawful restraint and assault for purposes of § 53a-64bb (b). See *State* v. *Watson*, supra, 192 Conn. App. 364–65. In *Morales*, as in the present case, the defendant was convicted of strangulation in the second degree, unlawful restraint in the first degree and assault in the third degree. *State* v. *Morales*, supra, 146. On appeal to the Appellate Court, the defendant claimed that the sentencing court's determination that the three charges were based on distinct and separate " 'incidents,' " for purposes of § 53a-64bb (b), violated his right to a jury trial under *Apprendi*. Id., 159. The court rejected the claim, concluding that, at sentencing, the trial court "simply looked at the evidence and concluded that the evidence [was sufficient to support] the jury's verdict on each of the separate charges," and then sentenced the defendant within the statutory maximum for each offense. Id., 161. The court in *Morales* reasoned that the *Apprendi* rule was not violated because the trial court did not "find any fact that enhanced the defendant's sentence beyond the statutory maximum permitted by the jury's verdict." Id.

The defendant contends that *Morales* was wrongly decided. To resolve that claim, we must decide whether the "upon the same incident" prohibition contained in § 53a-64bb (b) sets forth an element of the offense of strangulation in the second degree within the scope of the *Apprendi* rule. As we previously mentioned, the United States Supreme Court has supplied a succinct definition of what constitutes an "element" of a criminal

offense in this context: "Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact—no matter how the [s]tate labels it—constitutes an element, and must be found by a jury beyond a reasonable doubt." *Sattazahn* v. *Pennsylvania*, supra, 537 U.S. 111. Other definitions vary in focus and level of detail. See, e.g., *Almendarez-Torres* v. *United States*, 523 U.S. 224, 240, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (element of offense is "a fact necessary to constitute the crime" (internal quotation marks omitted)).

The traditional, common-law definition is somewhat more elaborate: "It is commonly stated that a crime consists of both a physical part and a mental part; that is, both an act or omission (and sometimes also a prescribed result of action or omission, or prescribed attendant circumstances, or both) and a state of mind." 1 W. LaFave, Substantive Criminal Law (3d Ed. 2018) § 5.1, p. 446; see also *United States* v. *Apfelbaum*, 445 U.S. 115, 131, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980) ("both a culpable mens rea and a criminal actus reus are generally required for an offense to occur"); *Morissette* v. *United States*, 342 U.S. 246, 251, 72 S. Ct. 240, 96 L. Ed. 288 (1952) (prerequisite of criminal conduct is "concurrence of an evil-meaning mind with an evil-doing hand"); *State* v. *Pond*, 315 Conn. 451, 461–62, 108 A.3d 1083 (2015) (recognizing "the well established . . . distinction between three types or categories of essential elements that define each criminal offense [i.e.] conduct, results, and attendant circumstances," and describing "attendant circumstances" as encompassing "elements such as the time or location of a crime, characteristics of the perpetrator or victim (e.g., the victim's age or the perpetrator's status as a convicted felon), or circumstantial features of the weapon used (e.g., whether a firearm is registered or operational)").[6]

With this guidance in mind, we turn to the language and structure of § 53a-64bb to assess whether the "same incident" prohibition contained in subsection (b) of the statute sets forth an element of the offense of strangulation in the second degree within the meaning of *Apprendi* and its progeny.

The language of subsection (b) itself, read in a vacuum, provides no clear answer to the question. It provides in relevant part: "No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information. . . ." General Statutes (Rev. to 2015) § 53a-64bb (b). On the one hand, by prohibiting a finding of guilty for the related offenses upon the same incident, the provision suggests that the determination is one for the jury because it is ordinarily

the jury, not the judge, that finds a defendant guilty.[7] On the other hand, the "same incident" proviso exhibits none of the usual indicia that denote an element of a crime.

First, as we will discuss shortly in greater detail, the prohibition is not included as part of the substantive portion of the statute defining the crime and its elements, § 53a-64bb (a); nor is it included as a sentencing factor in the statute's sentencing provision, § 53a-64bb (c). Instead, it is contained in a procedural provision instructing the court and prosecuting authority that the crime defined in subsection (a) may be charged in the same information as assault or unlawful restraint but that a person may not be found guilty of that crime *and* either of the other two designated offenses for the same incident. The operative portion of subsection (b) is a single sentence containing two parts; reading the sentence as a whole indicates that it contains an administrative directive regarding the proper procedure for charging and adjudicating the designated offenses. It establishes a particular limitation on the *prosecution* of the crime by prohibiting the state from obtaining guilty verdicts on a specified combination of designated charges; a person may be found guilty, convicted and punished for the crime of strangulation in the second degree, even if he also engaged in conduct that *could* support a jury finding that he committed the crime of unlawful restraint or assault as part of the same incident, as long as he is not prosecuted and found guilty of either of those two other crimes. The statutory provision at issue, in other words, does not define the elements of the crime; it limits the state's ability to successfully prosecute the crime.

Second, the "same incident" proviso does not set forth a circumstance that must be *present* for the crime to come into being but, instead, focuses on a procedural occurrence that must be *absent* at the conclusion of the trial. That is, a defendant can be found guilty of the crime of strangulation in the second degree only if he or she is *not* also found guilty of either of the two related crimes enumerated in the statute. This statutory limitation does not categorically preclude the "same incident" determination from being an element of the crime, but it would be very unusual for a legislature to define an element in such a manner. The defendant has not pointed to any statute that has been construed to do so.

Third, as noted, the structure of § 53a-64bb lends substantial force to the conclusion that subsection (b) does not set forth an element of the crime. The statute contains three subsections. See footnote 1 of this opinion. Subsection (a) defines the offense: "A person is guilty of strangulation in the second degree when such person restrains another person by the neck or throat with the intent to impede the ability of such other per-

son to breathe or restrict blood circulation of such other person and such person impedes the ability of such other person to breathe or restricts blood circulation of such other person." General Statutes (Rev. to 2015) § 53a-64bb (a). This provision plainly and unambiguously sets forth three elements of the offense of strangulation in the second degree. The state must prove that (1) the defendant restrained the victim by the neck or throat, (2) the defendant did so with the intent to impede the victim's ability to breathe or to restrict her blood circulation, and (3) the victim's breathing or blood flow was impeded as a result of the prohibited conduct. See, e.g., *State* v. *Dubuisson*, 183 Conn. App. 62, 69, 191 A.3d 229, cert. denied, 330 Conn. 914, 193 A.3d 560 (2018); *State* v. *Linder*, 172 Conn. App. 231, 239, 159 A.3d 697, cert. denied, 326 Conn. 902, 162 A.3d 724 (2017). These three elements describe the conduct, mens rea and result necessary to commit the offense.

Subsection (b) sets forth the prohibition at issue in this appeal: "No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information." General Statutes (Rev. to 2015) § 53a-64bb (b). Subsection (b) also identifies which statutory violations constitute "unlawful restraint" and "assault" for purposes of the prohibition.

Finally, subsection (c) of § 53a-64bb provides that strangulation in the second degree is a class D felony.

This statutory design illuminates the nature of the "same incident" prohibition for purposes of *Apprendi*. Rather than including the prohibition as one of the elements of the offense in subsection (a), the legislature chose to locate the provision in a separate subsection devoted to procedural issues involving the proper treatment of designated related offenses, namely, strangulation in the second degree, unlawful restraint and assault. Subsection (b)—unlike subsection (a)—identifies no conduct, result, attendant circumstances or mental state required as elements of strangulation in the second degree. The provision, instead, establishes the purely procedural limitations discussed previously.

C

It is readily apparent that the "same incident" prohibition was included by the legislature in subsection (b) rather than subsection (a) because the provision is not intended to set forth an element of the crime but, rather, to express legislative intentions relating specifically to double jeopardy. Indeed, the Appellate Court recently identified nineteen penal statutes using the same basic verbal formulation for precisely this purpose. See *State* v. *Burgos*, 170 Conn. App. 501, 555 n.37, 155 A.3d 246 (citing General Statutes §§ 53a-55a (a), 53a-56a (a), 53a-59a (b), 53a-59b (b), 53a-60a (a), 53a-60b (b), 53a-60c

(b), 53a-61a (b), 53a-61aa (a), 53a-64aa (b), 53a-64bb (b), 53a-64cc (b), 53a-70a (a), 53a-72b (a), 53a-92a (a), 53a-94a (a), 53a-102a (a), 53a-103a (a) and 53a-216 (a)), cert denied, 325 Conn. 907, 156 A.3d 538 (2017).[8] Both this court and the Appellate Court consistently have construed the meaning of such statutory language to trigger the protections of the double jeopardy clause.[9]

The purpose and meaning of this legislative formulation are so well understood that its absence in a particular statutory scheme has been construed to indicate a legislative intention to permit multiple convictions for related crimes arising out of the same incident. In *State* v. *Bernacki*, 307 Conn. 1, 23–24, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013), for example, we considered the absence of any such language in either General Statutes (Rev. to 2005) § 53a-217 (a) or General Statutes (Rev. to 2005) § 53a-223 (a) to support our conclusion, following our application of the two-pronged test established in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), that the defendant's conviction under both statutes did not violate his federal and state constitutional protections against double jeopardy. Specifically, we relied on the absence of express statutory language signifying a legislative intent to preclude multiple punishments as support for our conclusion that the defendant had failed to rebut the presumption of legislative intent created by our application of the *Blockburger* test. See *State* v. *Bernacki*, supra, 23–24. We explained that "the statutory scheme lacks language expressly indicating that the legislature intended to preclude multiple punishments for violating both [General Statutes (Rev. to 2005)] §§ 53a-223 (a) and 53a-217 (a) (3) (A), when those violations arise out of the same act or transaction. We repeatedly have observed that the lack of statutory language providing that the conviction of one offense precludes conviction of, or punishment for, committing a separate offense in the same act or transaction is a strong indication that the legislature intended to permit multiple punishments." Id.[10]

We have interpreted this statutory language in precisely this manner for thirty years. In *State* v. *Greco*, 216 Conn. 282, 287–88, 579 A.2d 84 (1990), this court rejected the defendant's claim that the double jeopardy clause barred the trial court from imposing consecutive sentences for his convictions of felony murder, first degree robbery and first degree burglary.[11] In our analysis of the felony murder statute, General Statutes (Rev. to 1989) § 53a-54c, we noted the absence of any language prohibiting a defendant from being found guilty or being convicted upon the same transaction or incident as the offenses of first degree burglary or first degree robbery. See id., 295. We cited examples of such prohibitions in twelve different statutes employing language similar to that in § 53a-64bb (b); id., 295 n.14; and concluded that, "[s]ince the legislature has shown

that it knows how to bar multiple punishments expressly when it does not intend such punishment, the absence of similar language in § 53a-54c provides evidence that the legislature intended cumulative punishment." Id., 295; see also *State* v. *Kirsch*, 263 Conn. 390, 418–19, 820 A.2d 236 (2003) (rejecting defendant's claim that his dual convictions under General Statutes §§ 53a-55 (a) (3) and 53a-56b (a) violated his right against double jeopardy in part due to absence of language prohibiting multiple punishment, noting that "our Penal Code is replete with other statutes in which the legislature expressly has barred conviction of two crimes for one action," and citing statutes with language similar to § 53a-64bb (b)); *State* v. *Re*, 111 Conn. App. 466, 471, 959 A.2d 1044 (2008) (relying on absence of prohibitory language in statute to reject defendant's double jeopardy claim and citing as contrast multiple statutes with language similar to that in § 53a-64bb (b)), cert. denied, 290 Conn. 908, 964 A.2d 543 (2009); *State* v. *Quint*, 97 Conn. App. 72, 80–81, 904 A.2d 216 (same), cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006); *State* v. *Servello*, 80 Conn. App. 313, 323, 835 A.2d 102 (2003) (same), cert. denied, 267 Conn. 914, 841 A.2d 220 (2004).

D

It should be clear by now that the trial court's determination at sentencing that the offenses of strangulation, assault and unlawful restraint were not "upon the same incident" simply does not implicate the constitutional principles underlying *Apprendi*. The statutory provision, rather, is directed at double jeopardy concerns. The defendant, moreover, has not provided us with any evidence that the jury historically played a role in resolving double jeopardy issues, and we have found none. See *Oregon* v. *Ice*, supra, 555 U.S. 168–69 (relying on absence of historical role played by jury in imposition of consecutive versus concurrent sentences to reject defendant's reliance on *Apprendi*). His claim on appeal fails as a result.

The defendant's legal argument ultimately rests on a flawed syllogism: (1) factual findings in criminal cases must be made by the jury as matter of constitutional right, (2) the "upon the same incident" determination required by § 53a-64bb (b) is a factual determination, and (3) the jury did not make the required factual determination in this case. The flaw in this reasoning, of course, is that not all factual questions presented for adjudication during the life of a criminal case must be decided by the jury. *Apprendi* and its progeny require no such thing. To the contrary, the trial court is required to make many factual findings as part of its obligation to decide legal issues arising before, during and after trial. A claim of double jeopardy is among the legal issues that are committed to the judicial authority for resolution. See, e.g., Practice Book § 42-20 ("[t]he judicial authority shall decide all issues of law and all ques-

tions of law arising in the trial of criminal cases"); *State* v. *Cody M.*, 337 Conn. 92, 99, 259 A.3d 576 (2020) ("[a] defendant's double jeopardy claim presents a question of law" (internal quotation marks omitted)); *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002) (defendant's double jeopardy "claim presents an issue of law").

The trial court in the present case found that the evidence presented to the jury established that an extended length of time passed between the victim's initial unlawful restraint by the defendant and her eventual escape, from approximately 3 p.m. to sometime after midnight. The evidence also revealed that the defendant attacked the victim in multiple locations in the apartment and that, in addition to restraining the victim by the throat, the defendant engaged in distinct conduct that did not constitute strangling, namely, hitting and punching the victim and preventing her from leaving the apartment. The trial court correctly determined that this assaultive conduct was readily separable from the defendant's conduct of restraining the victim by the throat. Given this evidence, the trial court correctly concluded that the charges of assault and unlawful restraint were not "upon the same incident" as the charge of strangling for purposes of § 53a-64bb (b).

The trial court's postverdict factual findings under § 53a-64bb (b) did not determine an element of the crime of strangulation in the second degree; nor did they lengthen the sentence to which the defendant was exposed with respect to any of the counts of conviction. Based on the jury's verdict finding the defendant guilty of the charges of strangulation, assault, unlawful restraint and threatening, the maximum sentence to which the court could have sentenced the defendant was twelve years.[12] The defendant's total effective sentence of twelve years, execution suspended after seven years, followed by three years of probation—which the court arrived at after determining that the evidence was sufficient to support the jury's verdict as to each of the four separate offenses—fell within that maximum.[13]

Under these circumstances, we agree with the Appellate Court that the defendant failed to demonstrate a violation of his constitutional rights.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* June 29, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Rev. to 2015) § 53a-64bb provides: "(a) A person is guilty of strangulation in the second degree when such person restrains another person by the neck with the intent to impede the ability of such other person to breathe or restrict blood circulation of such other person and such person impedes the ability of such other person to breathe or restricts blood circulation of such other person.

"(b) No person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information. For the purposes of this section, 'unlawful restraint' means a violation

of section 53a-95 or 53a-96, and 'assault' means a violation of section 53a-59, 53a-59a, 53a-59b, 53a-59c, 53a-60, 53a-60a, 53a-60b, 53a-60c, 53a-61 or 53a-61a.

"(c) Strangulation in the second degree is a class D felony."

Hereinafter, all references to § 53a-64bb in this opinion are to the 2015 revision of the statute.

[2] This court granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Should this court overrule *State* v. *Morales*, 164 Conn. App. 143, 136 A.3d 278, cert. denied, 321 Conn. 916, 136 A.3d 1275 (2016), in which the Appellate Court held that a trial court's postverdict determination of whether the crimes of strangulation, unlawful restraint, and assault occurred 'upon the same incident' under . . . § 53a-64bb (b) does not violate a criminal defendant's constitutional right to a jury trial?" *State* v. *Watson*, 333 Conn. 941, 218 A.3d 1049 (2019).

[3] For the sake of clarity, our recitation of the facts does not include the testimony and other evidence pertaining to the allegations of sexual assault because that evidence is not relevant to the issue on appeal in light of the jury verdict of not guilty with respect to the charge of sexual assault.

[4] The defendant did not argue in the trial court that the jury rather than the court was required to decide the issue.

[5] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*).

[6] The Model Penal Code defines an " 'element of an offense' " more broadly as "(i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as (a) is included in the description of the forbidden conduct in the definition of the offense; or (b) establishes the required kind of culpability; or (c) negatives an excuse or justification for such conduct; or (d) negatives a defense under the statute of limitations; or (e) establishes jurisdiction or venue . . . ." 1 A.L.I., Model Penal Code and Commentaries (1985) § 1.13 (9), p. 209. With respect to each of the "material element[s]"—conduct, attendant circumstances and result—the state must prove that the defendant acted with the legally required type of culpability, or mens rea. See id., § 2.02 (1), p. 225.

[7] The defendant suggests that, if the legislature had intended for the court rather than a jury to make the required determination, it could have written the statute to provide that no person may be "convicted" of strangulation upon the same incident as assault or unlawful restraint. A person is "convicted" only when a judgment of conviction has been rendered by a court of competent jurisdiction. See, e.g., General Statutes § 53a-217 (a) ("[f]or the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction"); General Statutes § 54-250 (1) (" '[c]onviction' means a judgment entered by a court upon a plea of guilty, a plea of nolo contendere or a finding of guilty by a jury or the court notwithstanding any pending appeal or habeas corpus proceeding arising from such judgment"); General Statutes § 54-280 (2) (" '[c]onvicted' means that a person has a judgment entered in this state against such person by a court upon a plea of guilty, a plea of nolo contendere or a finding of guilty by a jury or the court notwithstanding any pending appeal or habeas corpus proceeding arising from such judgment"). We shall see, upon further analysis, that the legislature uses the terms "found guilty" and "convicted" interchangeably in this particular context. See footnote 8 of this opinion.

[8] We note that, although many of these statutes prohibit a *conviction* upon the same incident; see, e.g., General Statutes § 53a-70a (a) ("[n]o person shall be convicted of sexual assault in the first degree and aggravated sexual assault in the first degree upon the same transaction"); many others, like 53a-64bb (b), prohibit a finding of *guilty* upon the same incident. See, e.g., General Statutes § 53a-55a (a) ("[n]o person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction"); General Statutes § 53a-60b (b) ("[n]o person shall be found guilty of assault in the second degree or larceny in

the second degree under section 53a-123 (a) (3) and assault of an elderly, blind, disabled or pregnant person or a person with intellectual disability in the second degree upon the same incident of assault or larceny"); General Statutes § 53a-60c (b) ("[n]o person shall be found guilty of assault in the second degree or assault in the second degree with a firearm and assault of an elderly, blind, disabled or pregnant person or a person with intellectual disability in the second degree with a firearm upon the same incident of assault"). Although the term "convicted" conveys the intended meaning more effectively than "guilty," it is clear that the legislature uses the terms interchangeably for this purpose.

[9] We have thoroughly examined the legislative history of § 53a-64bb to ensure that the legislature did not reveal a different intention when it enacted that statute. There is nothing in the legislative history indicating any contrary or conflicting intention in this regard. In addition, we conducted a similar review of the legislative history of the many statutes with similar wording. See *State* v. *Burgos*, supra, 170 Conn. App. 555 n.37 (citing statutes). That research yielded the same result.

[10] To illustrate the point, the court in *State* v. *Bernacki*, supra, 307 Conn. 24 n.18, cited numerous statutes with language similar to that in § 53a-64bb (b). See General Statutes § 53a-55a (a) ("[n]o person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction"); General Statutes (Rev. to 2011) § 53a-59a (b) ("[n]o person shall be found guilty of assault in the first degree and assault of an elderly, blind, disabled, pregnant or mentally retarded person in the first degree upon the same incident of assault"); General Statutes § 53a-59b (b) ("[n]o person shall be found guilty of assault in the first degree and assault of an employee of the Department of Correction in the first degree upon the same incident of assault"); General Statutes § 53a-72b (a) ("[n]o person shall be convicted of sexual assault in the third degree and sexual assault in the third degree with a firearm upon the same transaction"); General Statutes § 53a-92a (a) ("[n]o person shall be convicted of kidnapping in the first degree and kidnapping in the first degree with a firearm upon the same transaction").

[11] In *Greco*, the trial court had calculated the maximum sentence that the defendant faced consistent with its conclusion that consecutive sentences would be permissible. On appeal, the defendant challenged the trial court's denial of his motion to withdraw his plea. See *State* v. *Greco*, supra, 216 Conn. 286–87. The defendant conceded at oral argument before this court that his challenge to the trial court's decision depended on whether this court agreed with his double jeopardy claim. Id., 288.

[12] Strangulation in the second degree and unlawful restraint are class D felonies, each carrying a maximum sentence of five years incarceration. See General Statutes (Rev. to 2015) § 53a-64bb (c); General Statutes §§ 53a-35a (8) and 53a-95 (b). Assault in the third degree and threatening in the second degree are class A misdemeanors, each carrying a maximum sentence of one year incarceration. See General Statutes §§ 53a-36 (1), 53a-61 (b) and 53a-62 (c).

[13] The court sentenced the defendant to a term of five years incarceration, execution suspended after four years, followed by three years probation, for strangulation in the second degree; five years incarceration, execution suspended after three years, followed by three years probation, for unlawful restraint in the first degree; one year incarceration, execution suspended, and three years probation, for assault in the third degree; and one year incarceration, execution suspended, and three years probation, for threatening in the second degree, all counts to run consecutive to each other.